FREEMAN F. GROSS and LEAH L. GROSS, *et vir.,* v. S. C. HAMMOND.

167 So. 373.

Division B.

Opinion Filed March 25, 1936.

Rehearing Denied April 23, 1936.

*Byron M. Skelton* and *Charles J. Schuh,* for Appellants; *Hardee & Martin,* for Appellee.

BUFORD, J.—The appeal in this case is from a final decree dismissing an amended bill of complaint, the purpose of which was to require the defendants, the appellees here, to accept redemption from the lien of a mortgage on certain real estate and to require the fee simple title therein to be reinvested in the complainants.

The record shows that Ella C. Reed owned the property involved in this suit and while she was the owner thereof

she encumbered the same with mortgages; that at her death the property so encumbered passed to Freeman F. Gross. When Gross acquired the property he endorsed the notes secured by the mortgage. The payments on the notes and mortgage became in default.

About June 15, 1931, it was agreed between the parties that a friendly suit should be brought to foreclose the mortgage. Such suit was instituted and completed. The memorandum of the agreement was introduced as plaintiff's exhibit 3 and defendant's exhibit 4, in the following language, to-wit:

"Send the note, mortgage and abstract to Wilson & Bogue, who have been Mrs. Reed's attorneys for many years. They will have the foreclosure brought by other attorneys, but will supervise the entire foreclosure and a Master's Deed to the property will be returned to you when the foreclosure is completed. This foreclosure will be handled without expense to you; all expenses will be paid by Mr. Gross. As soon as the foreclosure is completed, which will be in about four months, Mr. Gross will pay you the interest up to date and will pay all of the back taxes and that part of the assessments that is due and will pay all costs of the foreclosure. You will then execute a deed either to Mr. Gross or to somebody whom he will designate at that time and will take back a mortgage in the same amount as the present mortgage that you hold now.

"You have the following grounds for foreclosing this mortgage:

"1. The principal is past due.

"2. The interest is past due.

"3. The City taxes for 1930 are past due and the same City taxes for 1931 are payable, but have not been paid yet.

"4. State and county taxes for 1930 are delinquent and a tax certificate for the same was sold in August of this year.

"5. Part of the installments on the City assessments are past due and have not been paid."

Munson, the mortgagee, took title to the property at the conclusion of the foreclosure sale. The sale was confirmed Feb. 15th, 1932, while Gross was still in possession of the property, the following agreement was entered into between the parties:

"This option agreement made this 12th day of February, A. D. 1932, by and between Charles S. Munson, and wife, Marjorie J. Munson, herein called the parties of the first part, and Freeman F. Gross, and wife, Leah L. Gross, herein called the parties of the second part,

"Witnesseth, that whereas the parties of the first part are the owners and holders of the following described property, situate, lying and being in the County of Pinellas, State of Florida, to-wit: North Seventy (70) feet of Lots One (1), Two (2) and Three (3) of Block Fifteen (15) of the Revised Map of St. Petersburg, Florida, according to the map of plat thereof on file and of record in the office of the Clerk of the Circuit Court of Pinellas County, Florida, which property is known and designated as the Wigwam Hotel, together with the furniture, equipment and personal property of every kind and nature whatsoever located therein, and whereas the said parties of the first part, have, for a valuable consideration, agreed to grant an option to the parties of the second part for the purchase of the property above described,

"Now, therefore, for and in consideration of the sum of Ten Dollars ($10.00) in hand paid by the parties of the second part to the parties of the first part, the receipt of which is hereby acknowledged, the parties of the first part

do hereby grant unto the parties of the second part the right to purchase the real and personal property above described at any time within one year from the date of this agreement for the sum of Fourteen Thousand Three Hundred Dollars ($14,300.00) upon the following terms and conditions, to-wit:

"That when the sum of Five Thousand Dollars ($5,-000.00) has been paid upon the purchase price of the said property, that the parties of the first part will convey the said property by a good and sufficient warranty deed and will take a mortgage from the parties of the second part for the balance of Ninety-three Hundred Dollars ($9,300.00), the terms, conditions and interest rate of said mortgage to be arranged by the parties at the time of execution thereof. Time is expressly made a material part of this option agreement, and the same shall expire and become null and void one year from the date hereof, unless the parties of the second part exercise their right hereunder within the said period of one year.

"This option agreement is hereby made binding upon the parties hereto, their heirs, executors, administrators and assigns.

"In witness whereof, the parties hereto have set their hands and seals the day and year above set forth."

An undated paper attached to that agreement, signed by the parties reads as follows:

"We, the undersigned, agree to renew its option agreement on the above described property to February 18, 1934."

Oral evidence shows that this was an extension of the agreement of February 12, 1932.

On November 2, 1933, Munson and his wife conveyed the property by deed to S. C. Hammond, a single person. That deed contained the following clause:

"This conveyance made subject to that certain lease dated February 18th, 1933, between Charles S. Munson and wife, to Freeman F. Gross and wife:

"Also subject to that certain option agreement dated February 12th, 1933, between Charles S. Munson and wife and Freeman F. Gross and wife."

This clause in the deed was sufficient to put Hammond on notice of any and all claims of Gross in and to the property, and to make any defenses available in favor of Gross against Munson also available in favor of Gross against Hammond, as well as to make the application of the enforcement of any rights which Gross may have had against Munson effective also as against Hammond, who took the deed subject to the rights of Gross under any and all agreements between Gross and Munson.

The court below appears to have entered the decree dismissing the bill of complaint upon the theory that the complainant was entitled to relief, if at all, by way of specific performance of the so-called option contract and as that contract was uncertain as to the terms, conditions and interest rate to be applied to the proposed deferred payments that it could not be enforced in a court of equity, as the court is without power to write a contract for parties, and therefore, the court could not fix the terms, conditions, interest rate and maturities of such deferred payments. Considered as an option to buy the property, the construction placed upon it by the chancellor is probably correct, but this we are not required to determine here because it appears to us conclusively established that the original debt for the security of the payment of which the mortgage was given was never extinguished. But, regardless of the formal foreclosure of the original mortgage, the debt remained unsatis-

fied and the option agreement was nothing more than an agreement for the successor in title to the original mortgage to redeem from the mortgage by the payment of the debt which he had assumed upon acquiring title to the property while the mortgage was in existence.

The whole transaction amounted to no more than if the title holder, Gross, had conveyed the property to the mortgagee with a concurrent agreement that upon the payment of the amount of the mortgage debt, the grantee in that deed would reconvey the property to the grantor. In Holmberg v. Hardee, 90 Fla. 787, and 813, 108 Sou. 211, we said:

"Where there is a purpose or intent to secure the payment of money any instrument conveying or selling property is in law a mortgage without reference to the terms of the instrument." See also Connor v. Connor, 59 Fla. 467, 52 Sou. 727; Tilman v. Niemira, 99 Fla. 833, 127 Sou. 855; Equitable Bldg., etc., Assn. v. King, 48 Fla. 252, 37 Sou. 181; McKinney v. Gainey, 96 Fla. 547, 118 So. 917; Walls v. Endel, 20 Fla. 86; Brooks v. Federal Land Bank, 106 Fla. 412, 143 Sou. 749, 753; First Nat. Bank v. Ashmead, 23 Fla. 379, 2 So. 657; Vanderpool Properties v. Hells, 100 Fla. 933, 130 So. 457.

In Stovall v. Stokes, 94 Fla. 717, 115 Sou. 282, we said:

"A deed absolute on its face may by parol evidence be shown to be a mortgage, and in cases of doubt the instrument should be held to be a mortgage.

"10. An instrument must be deemed and held a mortgage, whatever may be its form, if, taken alone or in connection with the surrounding facts and attendant circumstances, it appears to have been given for the purpose or with the intention of securing the payment of money, and the mere absence of terms of defeasance cannot determine whether it is a mortgage or not.

"11.   When it is once established that a mortgage exists the equitable right of redemption attaches to the transaction as an inseparable incident.   No contemporaneous understanding, however, formally expressed or artfully concealed, will be permitted to deprive the debtor of this right.   It can be defeated only by a subsequent agreement upon a further consideration.

"12.   The right of a mortgagee to become the purchaser of the equity is unquestioned, but the relations of the parties are such that the transaction will be carefully scrutinized.

"13.   A conveyance of mortgaged premises by the mortgagor to the mortgagee will be regarded as a mere change in the form of the security, unless it clearly and unequivocally appears that both parties intended that it should operate as a bar to the equity of the redemption.

"14.   The rule which requires more than a preponderance of evidence to establish an absolute deed as a mortgage cannot be applied to a deed covering premises already mortgaged by the grantor to the grantee without overruling a long established rule pertaining to the equity of redemption."

In this view of the record, we must reverse the decree and remand the cause for further proceedings not inconsistent with the views herein expressed.

It is so ordered.

Reversed and remanded.

ELLIS, P. J., and TERRELL, J., concur.

WHITFIELD, C. J., and BROWN and DAVIS, J. J., concur in the opinion and judgment.