**J. H. MERCER v. CHARLES F. MILLER**

24 So. (2nd) 893  
February 15, 1946  
Rehearing denied March 3, 1946

January Term, 1946  
Division A

*Tyrus A. Norwood, Loftin, Anderson, Scott, McCarthy & Preston,* for appellant.

*John C. Sullivan,* for appellee.

BUFORD, J.:

The appeal brings for review judgment in favor of the defendant in a suit for commission alleged to be due to plaintiff by the defendant under a contract of employment by the defendant of the plaintiff to find a purchaser for certain described property who was ready, able and willing to purchase the property on terms agreeable to the defendant.

The original declaration was in five (5) counts. Later counts 3 and 4 were amended. Pleas were filed: 1st, that defendant was never indebted as alleged; 2, that he never promised as alleged; 3rd, that the purchaser withdrew his offer for the property and accepted a return of his binder of $5,000.00 and that the contract was by mutual consent cancelled. The 4th, 5th, 6th and 7th pleas were by way of special traverse to the allegations of the declaration.

Issues were joined and the trial proceeded.

The record shows that in the latter part of May, 1944, the plaintiff, a real estate broker, contacted Mr. E. A. McLaughlin and learned that he wished to acquire property in Miami, Florida. He then contacted the defendant who owned the described property in Miami and asked him if that property was for sale and if he could deliver possession. The defendant told plaintiff that the property was for sale but that it was then under lease to Embry-Riddle Company but that he *thought* that Embry-Riddle Company was in financial difficulties and

would not make the rental payment due on July 1st and if the lessee failed in this he would be able to deliver possession. Embry-Riddle was then in actual open possession of the property. The plaintiff took McLaughlin on May 31st, 1944 out to look over the property. When they arrived on the scene they were denied admission to the property. Plaintiff then got in touch with Miller, the owner, and arranged for him to meet plaintiff and McLaughlin on the property on the 1st day of June. They met on the property and there, for the first time, was anything said about commissions to the broker. Miller wanted to know whether or not he would have to pay a commission and plaintiff told him in effect that under the law he was supposed to be representing him (Miller) and would expect the commission from Miller.

Thereupon Miller named a price to McLaughlin of $125,-000.00 cash, with $5,000.00 down as a binder and told McLaughlin that the contract for sale would have to be subject to the terms of the lease to Embry-Riddle Company and that the lease had not been recorded; that he thought it was in the office of his attorney and he would get the lease and send it to the plaintiff. This he did immediately.

Afterwards, on the 2nd of June, 1944 a contract was drawn and executed between Miller and his wife and E. A. McLaughlin, the pertinent parts of which contract are as follows:

"That if the purchaser shall first make the payments and perform the covenants hereinafter mentioned on his part to be made and performed, the sellers hereby covenant and agree to convey and assure to the purchaser by good and sufficient warranty deed simultaneously with the completion of such payments and the performance of the other covenants herein contained, that certain real estate located in Dade County, Florida, and more particularly described as follows:

> Lots Four (4) to Sixteen (16), both inclusive, Block One (1) of Northwest Twentieth Street Heights, according to a plat thereof recorded in Plat Book 11, page 59 of the Public Records of Dade County, Florida;

together with all buildings, improvements and equipment of every kind and nature, except that specifically described in

the schedule attached free and clear of all encumbrances except that certain lease dated August 27, 1942, between Charles F. Miller and Embry-Riddle Company and supplements thereto, applicable zoning regulations and taxes for the year 1944 upon the following terms and conditions, to-wit:

"1. The purchase price shall be "ONE HUNDRED TWENTY-FIVE THOUSAND DOLLARS ($125,000.00) payable in cash upon the consummation of the transaction, $5,-000.00 of which has been paid, the receipt whereof is hereby acknowledged, and is to be credited thereon.

"2. The sellers will forthwith notify Embry-Riddle Company of this agreement giving it 15 days to make an offer of equal terms as provided in paragraph Seven of said lease above referred to. In the event Embry-Riddle Company shall make a bona fide equal offer, the sum hereby paid shall be returned.

"3. In the event Embry-Riddle Company does not make a bona fide equal offer, then the sellers will procure and deliver to the purchaser, or his nominee, an abstract of title covering the above described property certified to a date not earlier than this agreement.

"4. The purchaser, or his nominee, shall cause such abstract to be examined and conclude this transaction on or before 30 days after the delivery of such abstract, assuming, of course, that such abstract exhibits good and marketable title in the sellers, subject to the encumbrances hereinbefore enumerated. If the purchaser, or his nominee, fails to conclude this transaction as hereinabove provided, then and in that event the sum of $5,000.00 this day acknowledged by the sellers shall be retained by them as liquidated and agreed damages and each of the parties hereto shall thereupon be released and relieved of all further obligations hereunder.

"5. In the event the abstract fails to exhibit good and marketable title subject to the encumbrances hereinbefore enumerated and the sellers fail to make such title good and marketable within 60 days from the closing date herein specified, then and in that event the sum of $5,000.00 this day acknowledged by the sellers, shall forthwith be returned to the purchaser and each of the parties hereto shall thereupon

be released and relieved of any and all obligations hereunder, provided, however, the purchaser shall have the right to accept the title irrespective of its marketability and consummate the transaction."

The lease referred to contained an option to purchase worded as follows:

"SEVEN. The Lessor hereby resolves the right to sell the premises hereby leased, and if and when the Lessor shall have any offer for the purchase of said premises which he is willing to accept, he will, prior to accepting the same, give the lessee an opportunity to purchase the premises by notifying it in writing of such offer and giving it fifteen (15) days thereafter in which itself to equal the offer so received."

Miller then, in accordance with paragraph No. 2 of the contract, immediately notified Embry-Riddle Company of his contract with McLaughlin and advised it that unless it exercised its option, quoted supra, he would consummate the deal with McLaughlin. On June 16, 1944, Embry-Riddle Company notified Miller that it would equal the offer made in the contract by Mr. McLaughlin. This was done within the 15 day limit specified in the lease agreement.

On June 17th Mr. Miller, through his attorney, notified the attorneys for Mr. McLaughlin that Embry-Riddle Company had exercised its option to purchase and returned to them the $5,000.00 binder, whereupon Mr. McLaughlin's attorneys wrote to Mr. Miller's attorney as follows:

"This will acknowledge receipt of your letter of the 17th enclosing copy of letter received by you from Embry-Riddle Company and your check payable to our order in the sum of $5,000.00.

"If Embry-Riddle Company does not consummate the purchase of the property described in its letter to you within thirty days from this date, we shall expect Mr. Miller to convey the property to our client Mr. E. A. McLaughlin in accordance with the terms of agreement between them dated June 2d, 1944. Of course, since thirty days is being given to Embry-Riddle Company within which to consummate the transaction, the time within which Mr. McLaughlin will be

required to conclude his purchase will be extended for a like period of time."

On June 19th 1944, Mr. Miller, in reply to the above letter wrote the attorneys as follows:

"This will acknowledge your letter of the 17th inst. addressed to John C. Sullivan, in which you acknowledge the receipt of the return of the $5,000. deposit made by Mr. E. A. McLaughlin for the purchase of the Twentieth Street Property belonging to me.

"The conditions stated in your letter are satisfactory; to-wit: that if Embry-Riddle Company does not consummate the transaction for the purchase of the property I will sell the same to Mr. McLaughlin according to the terms and provisions of the contract entered into between him and me on June 2, 1944."

On July 19th, 1944, Mr. Miller wrote to the attorneys for Mr. McLaughlin as follows:

"On June 2, 1944, Charles F. Miller entered into a contract with E. A. McLaughlin for the sale of that certain property situate, lying and being in Dade County, Florida, more particularly described as follows:

Lots 4, to 16, both inclusive, Block 1, N. W. 20th STREET HEIGHTS.

"This property was sold subject to the terms and provisions of an existing lease which Mr. Miller had with Embry-Riddle Company one of the provisions of said lease being that they had an option of buying at the price offered to him during the leasehold period.

"Subsequently, on June 16, 1944, the Embry-Riddle Company exercised its option to purchase said property. This deal has not been closed for the reason, however, that on July 14, 1944, we received a letter to the effect that the building which they were occupying at 27th Avenue had been condemned by the Navy and that they were in the process of moving, requesting an extension of the closing date from July 17th to August 1st. This extension was granted.

"You stated to Mr. Sullivan over the telephone a few days ago that on account of the extension of time, Mr. McLaughlin

would like to be released from any obligations to purchase the property. It is perfectly satisfactory to me to release Mr. McLaughlin from the obligation to purchase the property; provided, however, that this release is a mutual release and that I, too, am released from any and all obligations by reason of said contract. Will you, therefore, indicate on the enclosed copy of this letter your acceptance of the foregoing terms and conditions."

And, on the same date, there was made on the bottom of that letter the following notation of acceptance by counsel:

"Acceptance of the foregoing terms and conditions is acknowledged hereby this 19th day of July, 1944."

Thereafter, the plaintiff demanded of the defendant the payment of the commission of $6250.00 and, upon the same being declined, plaintiff filed this suit in the Circuit Court of Dade County, Florida, on October 2nd, 1944, with the result as hereinabove stated.

On the trial plaintiff requested 5 charges which were refused. The requested charge were as follows:

"The Court instructs you that if you believe from the evidence in this case that the defendant agreed with plaintiff to sell the premises described in the declaration for $125,000. cash, and agreed to pay him a commission of 5% thereof for his services as broker in the matter, and failed to inform plaintiff that he could not convey title to the property if Embry-Riddle Company availed itself of the option to purchase contained in the lease to that Company, and that plaintiff had no knowledge thereof until after the plaintiff had procured and introduced to the defendant a purchaser who was ready, willing and able to purchase the property for the sum of $125,000., and if you further find that the failure of the sale was due to defendant's inability or refusal to convey title to the purchaser introduced to him by plaintiff and not to any fault of plaintiff's, or the purchaser, then your verdict should be for the plaintiff regardless of the fact that the sale of the premises was not consummated, and you should assess his damages at 5% of $125,000.00 together with interest thereon at 6% per annum from the time demand was

made upon defendant therefor, if any demand was made, and if not then from the time of the institution of this suit.

"2. The Court further instructs you that if you ·believe from the evidence that the defendant failed to inform the plaintiff of the option to purchase contained in the lease to Embry-Riddle Company, and that plaintiff otherwise had no notice thereof, then plaintiff had a right to· assume that the defendant could and would convey title to the property, and if you believe that the defendant allowed the plaintiff to procure a purchaser ready, willing and able to buy on terms agreeable to the defendant and did not inform the plaintiff of the option to purchase, and that plaintiff had no knowledge of it otherwise until after he had procured the said purchaser, and if you further believe that the sale of the property was prevented by the inability or refusal of defendant to convey title to said purchaser and not due to any fault of the plaintiff, or the purchaser, then your verdict should be for the plaintiff.

"3. The Court further instructs you that if you believe from the evidence in this case that defendant agreed with plaintiff to sell the premises described in the declaration for $125,000. and agreed to pay him a commission of 5% thereof for his services as broker in this matter, and if you further believe that the plaintiff procured and introduced Mr. McLaughlin, the proposed purchaser, to the defendant, and that defendant agreed to sell the property to Mr. McLaughlin within thirty days from June 17, 1944, and Mr. McLaughlin was ready, willing and able to purchase the property during that time, and that defendant refused to convey said property within that time and such refusal was not due to any fault of the plaintiff or the proposed purchaser, then your verdict should be for the plaintiff and you should assess his damages at 5% of $125,000, together with interest thereon at 6% per annum from the time demand was made therefor upon defendant, if any demand was made, and if not then from the time of the institution of this suit.

"4. The Court further instructs you that if you believe from the evidence in this case that the defendant agreed with the plaintiff to sell the premises described in the declaration

for $125,000. cash, and agreed to pay him a commission of 5% thereof for his services as broker in the matter, and that the plaintiff thereafter procured and introduced to the defendant a purchaser who was ready, willing and able to buy the property for the sum of $125,000. cash on terms agreeable with the defendant, and that the sale of said property failed of consummation due to the delay or fault of the defendant and not to any fault of the plaintiff or to the purchaser which he produced, then your verdict should be for the plaintiff and you should assess his damages at 5% of the $125,000., together with interest thereon at 6% per annum from the time demand was made upon defendant therefor, if any demand was made, and if not, then from the time of the institution of this suit.

"5. The Court further instructs you that if you believe from the evidence in this case that the defendant agreed with the plaintiff to sell the premises described in the declaration for $125,000. cash and agreed to pay him a commission of 5% thereof for his services as broker in the matter, and the plaintiff produced a purchaser to the defendant who was ready, willing and able to buy the property in question for the sum of $125,000. on terms agreeable to the defendant, and a contract to purchase the same was entered into between the purchaser and the defendant, and thereafter without any fault of the plaintiff the defendant released the said purchaser from the terms of said contract, then your verdict should be for the plaintiff and you should assess his damages at 5% of $125,000., together with interest thereof at 6% per annum from the time demand was made upon defendant therefor, if any demand was made, and if not, then from the time of the institution of this suit."

The refusal of each of these several charges was made ground for motion for new trial.

The appellant, plaintiff below, has stated two questions for our consideration based on the refusal of the Court to give the charges, supra. The questions presented are as follows:

"QUESTION I.

"In a suit for broker's commission where the declaration alleges and the proof shows that plaintiff, a qualified real

estate broker, was promised by defendant a commission on the purchase price if plaintiff produced a purchaser of certain property of defendant, that plaintiff did produce a purchaser ready, willing and able to purchase on terms agreeable to defendant, but through no fault of the purchaser or plaintiff and solely because of defendant's inability to convey title thereto, which defect in the title plaintiff had no knowledge, the sale was not consummated, did the lower court err in refusing to charge the jury that if it found these facts to be true, they should find for plaintiff regardless of whether or not the sale was consummated?"

QUESTION II.

"In a suit for broker's commission where the declaration alleges and the proof shows that plaintiff, a real estate broker, was employed by defendant to find a purchaser for certain property of defendant, that a purchaser was produced by plaintiff and a contract entered into between the proposed purchaser and defendant and that thereafter, during the term of the contract, the defendant released the purchaser from said contract, did the lower court err in refusing to charge the jury that if they found these facts to be true they should find for plaintiff, regardless of whether or not the sale was completed?"

Every count of the declaration and of the amendments thereto was based on the premise that the owner had agreed to pay plaintiff a commission of 5% of $125,000.00 if plaintiff produced a customer ready, willing and able to buy the property under terms and conditions agreeable to the owner and the charges requested were based on the same premise.

We do not find evidence in the record to support this contention. The entire evidence shows that the agreement to pay commission was dependent on the consummation of a sale of the property by the owner to McLaughlin or his principal. This is borne out by a letter to plaintiff and John E. Shuey dated June 2, 1944, which is as follows:

"I have today agreed to sell, subject to certain conditions, that certain property located in Dade County, Florida, and described as follows:

Lots Four (4) to Sixteen (16) both inclusive, Block One (1) of Northwest Twentieth Street Heights, according to a plat thereof recorded in Plat Book 11, page 29, of the Public Records of Dade County, Florida;

together with all buildings, improvements and equipment to E. A. McLaughlin and hereby agree to pay you a commission of $6,250.00 as brokers in connection with such transaction."

See Durham Tropical Land Corp. v. Sun Garden Sales Co. et al., 106 Fla. 429, 151 Sou. 327.

The record shows conclusively that all the parties knew that the property was in the exclusive possession of Embry-Riddle Company under a lease and this was sufficient to put any one interested in the sale or purchase of the property on inquiry as to the full terms and conditions of the lease. See Cross et al. v. Hammond, 123 Fla. 471, 167 Sou. 373; Carolina Portland Cement Co. v. Roper et al., 68 Fla. 299, 67 So. 115; Tate v. Pensacola etc. Dev. Co. 37 Fla. 439, 20 S. 542; McAdoo v. Wachob, 45 Fla. 482, 33 So. 702.

The record shows that before the so-called contract of purchase and sale of the property (which was at best only an option to purchase) was executed the plaintiff and the proposed purchaser had access to the lease and were cognizant of the terms thereof and were therefore on notice that the owner was not in position to make an unconditional contract to sell and also that that he did not make such contract. It follows that the plaintiff and all other interested parties were fully advised that Miller could not consummate the proposed deal with McLaughlin unless Embry-Riddle Company should fail to exercise the option contained in the lease.

The record shows that Embry-Riddle Company did exercise the option within the specified time and did put up $5,-000.00 in so doing and that thereupon the owner advised McLaughlin through his counsel of such occurrence and returned the $5,000.00 binder which McLaughlin had put up.

So we must hold that under the facts and lack of facts as disclosed by the evidence the court below did not commit reversible error in refusing to give the requested charges.

Judgment affirmed.

CHAPMAN, C. J., TERRELL and ADAMS, JJ., concur.