FREEMAN F. GROSS, *et al.,* v. S. C. HAMMOND

188 So. 789
Division A.
Opinion Filed May 16, 1939
Rehearing Denied June 2, 1939

*Byron M. Skelton* and *Charles J. Schuh,* for Appellants;
*Edwin R. Dickenson* and *Hardee & Martin,* for Appellee.
*Ed. W. Harris,* as *Amicus Curiae.*

PER CURIAM.—The appeal brings for review final decree, as follows "This case is now before the Court for consideration after final hearing and the taking of all the testimony. This same case was before this Court on motion to dismiss, which motion was granted and appeal was taken to the Supreme Court of Florida.

"The Supreme Court of Florida (see 167 Southern 373), speaking through Mr. Justice BUFORD, rendered an opinion reversing the order of the lower Court. The cause then came back to the Circuit Court and the final hearing above referred to was had as a result of the Supreme Court's order of reversal and direction to the lower court to proceed

with the cause. The facts are clearly stated in the opinion by the learned Mr. Justice BUFORD.

"At the time that the lower Court granted the motion to dismiss the bill, this Court did enter the decree dismissing the bill as suggested in the Supreme Court decision, upon the theory that the complainant was seeking specific performance of a so-called option-contract, and 'as that contract was uncertain as to the terms, conditions and interest rate to be applied to the proposed deferred payments, that it could not be enforced in a Court of Equity, as the Court is without power to write a contract for parties, and therefore, the Court could not fix the terms, conditions, interest rate and maturities of such deferred payments.' However, this was not the only theory upon which the lower court entered the decree dismissing the bill of complaint.

"The lower court was not unconscious of the fact that there was an attempt made by the bill to set up a secret agreement to the effect that the foreclosure of the mortgage held by one Charles S. Munson was a so-called friendly foreclosure, and for that reason did not as between the parties have the effect of barring the right of the plaintiffs to their equity of redemption but merely changed the form of the indebtedness and that whatever deed Munson secured by virtue of the so-called friendly foreclosure gave him no greater right than he previously had as mortgagee under the mortgage and, further, that the purchaser of the property, to-wit: S. C. Hammond, was not an innocent purchaser for a valuable consideration without notice of the so-called secret friendly foreclosure by virtue of the fact that Freeman F. Gross and wife, Leah L. Gross, plaintiffs herein, were in possession of the property and that such possession was sufficient to put S. C. Hammond, the purchaser, on notice of all the rights of Freeman F. Gross and Leah L.

Gross, his wife, under any and all agreements between Gross and Munson.

"With this theory of the bill, the lower court did not agree and held the bill insufficient because of the fact that while unquestionably the rule is well established that possession may be regarded as notice of any right claimed by the one in possession and that such possession puts one on inquiry, yet there is an exception to the rule which the lower court at that time thought was applicable to facts in this case.

The exception is well stated in the case of Tyler v. Johnson, *et al.*, 55 Southern 870, and I quote from the body of the opinion, as follows:

" 'Actual possession of the land affords notice that such possession is presumably pursuant to some right, and, if that right is not shown by a duly recorded title, the possession may be regarded as notice of any right claimed by the one in possession. Such possession puts a purchaser on inquiry. Massey v. Hubbard, 18 Fla. 688. But if the right of t he party in possession is shown by the duly recorded title to the land, the possession merely as such and without other notice may be regarded as having reference solely to and as being notice only of the title as disclosed by the record, if the possession is consistent with the record title. If the possession is consistent with the record title, and that title does not exclude the right of another to concurrent interest in and possession of the land, the possession may be regarded as notice only of the claim or title of the party in possession as shown by the record; and a bona fide purchaser for value and without actual notice of a claim of the party in possession to the outstanding concurrent right takes a good title as against the person in possession, even though such person in possession

has an equitable interest not shown by the record to be in him.

" 'See Wade on Notice, Secs. 209-297; 2 Tiffany on Modern Law of Real Property, Sec. 480, p. 1089;

" 'Smith v. Yule, 31 Cal. 180, 89 Am. Dec. 167; Fargason v. Edrington, 49 Ark. 207, 4 S. W. 763.'

"At the time that the lower court granted the motion to dismiss the bill, the Court was of the opinion that though S. C. Hammond had notice unquestionably of the possession of Freeman F. Gross and wife of the property, he also unquestionably had notice of the existing lease and option agreement, to which reference is made in the opinion of our Supreme Court, for the deed which Mr. S. C. Hammond received from Mr. Munson sets forth:

" 'This conveyance made subject to that certain lease dated February 18, 1933, between Charles S. Munson and wife to Freeman F. Gross and wife; also subject to that certain option agreement dated February 12, 1933, between Charles S. Munson and wife and Freeman F. Gross and wife.'

"The only difference between the law, as announced in Tyler v. Johnson, and the only possible reason that this Court can see that the law of that case should not control the instant case, is the fact that while Hammond had notice of the lease and option he did not secure that notice from the record title. Had he done so, the law as set forth in Tyler v. Johnson, *supra,* would unquestionably have applied. This Court could see no reason for not applying the law as announced in Tyler v. Johnson merely because of the fact that Hammond learned why Gross was in possession from an unrecorded lease rather than from a recorded lease. Certainly, the possession of Gross was consistent with the existing lease and option.

"This is written in explanation of the lower court's order

dismissing the bill. This Court has repeatedly followed the mandate of the Supreme Court. It occurs to the writer that though he has been unable to grasp the distinction between the case of Tyler v. Johnson, *supra,* and the instant case that there must be apparent to the Honorable Supreme Court a distinction, since in the opinion in this case (167 Southern 373) there was no reference to overruling the law, as announced in Tyler v. Johnson, *supra.* The lease from Munson to Gross, of which Hammond unquestionably had notice, showed that it was contemplated that Gross should operate the hotel and this he was doing when Hammond bought. Gross's possession was consistent with his rights under the lease and option. Neither the lease nor option gave any hint of the so-called friendly foreclosure.

"Reference has been made by this Court to the above history by virtue of the fact that the decision rendered by our Honorable Supreme Court in the instant case has been taken by many to over-rule the law, as announced by our Supreme Court in the case of Tyler v. Johnson, *supra.*

"Upon consideration of the record as a whole and all of the evidence presented before this Court upon final hearing, the Court finds that there was no agreement between Gross and Munson for a friendly foreclosure which would have the effect only of changing the form of the security. The evidence suggests the possibility of such an understanding on the part of Gross, but it does not establish an agreement between Gross and Charles S. Munson that the foreclosure was merely to be a matter of form and the Master's Deed when secured by Munson was to merely be a mortgage, although in form a Master's Deed.

"It is the opinion of this Court that the evidence does not disclose a purpose or an intent on the part of Freeman F. Gross and Charles S. Munson to consider the Master's deed as security for the payment of money.

"There are many reasons why the Court makes the above finding, among which is the fact, first: That there has been no proof of an agreement of any kind or character, between Charles S. Munson, the original mortgagee, and Gross, with regard to a friendly foreclosure, although there is evidence that there was some conversation relative to a friendly foreclosure between Gross and his wife and Mr. Charles S. Munson's father, John N. Munson, which conversation, if it had amounted to an agreement at all, was not binding upon Charles S. Munson, and, second: The fact that Mr. Gross executed a bill of sale to all the furniture in the hotel to satisfy an existing deficiency after the sale of the mortgaged premises. This bill of sale to the furniture, which furniture was not covered by the lien of the mortgage, was made by Mr. Gross to Mr. Charles S. Munson after the Special Master's sale of the premises under the foreclosure and prior to the report of the Special Master, which report did not show the deficiency but the satisfaction of the deficiency by the execution of the bill of sale to the personal property was made known to the Court before confirmation.

"The COURT therefore finds that the equities are with the defendants and that the bill should be dismissed.

"IT IS THEREUPON ORDERED, ADJUDGED AND DECREED that this cause be, and the same is, hereby dismissed.

"IT IS FURTHER ORDERED, ADJUDGED AND DECREED, that the defendant S. C. Hammond, do have and recover of and from the plaintiff Freeman F. Gross his costs so paid out and expended by the defendant, here taxed by the Court in the sum of $6.15; for which let execution issue.

"DONE AND ORDERED at Chambers in St. Petersburg, Pinellas County, Florida, this 10th day of November, A. D. 1937."

This is the second appearance of this case here. See Gross v. Hammond, 123 Fla. 471, 167 Sou. 373. That certain paper writing quoted in our former opinion, as follows:

"Send the note, mortgage, and abstract to Wilson & Bogue, who have been Mrs. Reed's attorneys for many years. They will have the foreclosure brought by other attorneys but will supervise the entire foreclosure and a Master's Deed to the property will be returned to you when the foreclosure is completed. This foreclosure will be handled without expense to you; all expenses will be paid by Mr. Gross. As soon as the foreclosure is completed, which will be in about four months, Mr. Gross' will pay you the interest up to date and will pay all of the back taxes and that part of the assessments that is due and will pay all costs of the foreclosure. You will then execute a deed either to Mr. Gross or to someone whom he will designate at that time and will take back a mortgage in the same amount as the present mortgage that you hold now.

" 'You have the following grounds for foreclosing this mortgage:

" '1. The principal is past due.

" '2. The interest is past due.

" '3. The City taxes for 1930 are past due and the same city taxes for 1931 are payable, but have not been paid yet.

" '4. State and County taxes for 1930 are delinquent and a tax certificate for the same was sold in August of this year.

" '5. Part of the installments on the City assessments are past due and have not been paid,' "
caused some confusion and we were somewhat misled by the fact that there appeared on the exhibit the following notations: "Pl. Ex. 3 10-12-34" and also "defendant's ex. 4 for Iden." From this we arrived at the conclusion

that this paper was of more importance than it really was. It is now shown by the record here that paper was introduced by the plaintiff in the court below in this suit and that it had been previously introduced in evidence by him when he was a defendant in another suit wherein judgment of eviction was entered against him as to the property here involved.

This suit was originally instituted by a bill for specific performance of the option agreement which has been referred to in the decree above quoted.

In that bill, amongst other things, it was alleged.

"Prior to the 18th day of February, 1932, plaintiff, Freeman F. Gross, was the owner in fee simple of a certain hotel and equipment located on the following described property situate, lying and being in the County of Pinellas, State of Florida, to-wit:

"North Seventy (70) feet of Lots One (1), Two (2) and Three (3) of Block Fifteen (15) of the Revised Map of St. Petersburg, Florida, according to the map or plat thereof on file and of record in the office of the Clerk of the Circuit Court of Pinellas County, Florida, which property is known and designated as the Wigwam Hotel, together with the furniture, equipment, and personal property of every kind and nature whatsoever located therein;

"That John M. Munson was the owner of a certain mortgage on said hotel property; that plaintiff, Freeman F. Gross, became in default in the payment of the amount of money secured by said mortgage and a friendly foreclosure was instituted to foreclose said mortgage, that at said mortgage sale the premises hereinbefore described were purchased by Charles S. Munson and Marjorie J. Munson and on the 18th day of February, 1932, said Charles S. Munson and Marjorie J. Munson, his wife, made, executed and delivered to Freeman F. Gross and Leah L. Gross a

certain option agreement in accordance with the understanding had between the mortgagee John M. Munson, and the mortgagor, Freeman F. Gross, at the time of the institution of the friendly foreclosure of said mortgage; that in and by said option agreement it was provided that Freeman F. Gross and Leah L. Gross were given the right to purchase the real and personal property hereinbefore described at any time within one year from the date of said agreement, to-wit: the 18th day of February, 1932, for the sum of Fourteen Thousand Three Hundred ($14,300.00) Dollars upon the following terms and conditions, to-wit:

" 'That when the sum of Five Thousand Dollars ($5,000.00) has been paid upon the purchase price of the said property, that the parties of the first part will convey the said property by a good and sufficient warranty deed and will take a mortgage from the parties of the second part for the balance of Ninety-three Hundred Dollars ($9,300.00), the terms, conditions and interest rate of said mortgage to be arranged by the parties at the time of execution thereof.'

"All as will more fully appear by a copy of said option agreement as executed, hereto attached, marked Plaintiff's Exhibit No. 1 and made a part of this bill of complaint as fully as if written at length herein."

Later that bill was amended as touching this particular matter and, after the amendment, was verified as follows:

"And plaintiffs further amend their bill of complaint by adding a verification, as follows:

" 'State of Florida,

" 'County of Pinellas:

" 'Freeman F. Gross being first duly sworn says that he has read the foregoing bill of complaint and the amendment thereto and that the facts therein stated are true.

" 'Freeman F. Gross.

"Subscribed in my presence and sworn to before me this 22nd day of March, A. D. 1934,

Velma Adams

" '(Notarial Seal)     Notary Public, State of Florida
Velma Adams     at Large. My Commission ex-
Notary Public     pires Oct. 21, 1936.'
State of Florida     "Spear, Viney & Skelton
at Large.     "B. M. Skelton
"Attorneys for plaintiffs."

Thereafter, the complainant in the court below abandoned this theory of his case and amended his bill so as to make it one seeking a decree to the effect that the mortgage debt had never been cancelled or discharged and that the option agreement was in effect a continuation of the mortgage debt and under this theory the complainant sought to have enforced his alleged right to discharge the mortgage debt and have cancelled the decree of foreclosure, the Master's Deed and all subsequent conveyances.

After the mandate of this Court went down, subsequent to the opinion and judgment, *supra,* the defendant Hammond by and with leave of the Court, filed an amendment to his answer. In such amendment he, *inter alia,* averred:

"Further answering the said amended bill of complaint as amended, this defendant says that prior to the purchase of the real estate and personal property described in the bill of complaint by this defendant from Charles S. Munson and Marjorie J. Munson, his wife, on or about the 2nd day of November, 1933, this defendant conferred with the plaintiff Freeman F. Gross, and informed the said Freeman F. Gross that this defendant was about to purchase the said real and personal property from Charles S. Munson and wife, and then and there inquired of the plaintiff as to what right, title and interest the plaintiff had or claimed in and

to the said described real and personal property, and the plaintiff then and there advised and assured this defendant that the only claim that he, the said plaintiff, had or asserted in and to said described real and personal property consisted of the lease from Charles S. Munson and wife described and set up in the bill of complaint, and the option to purchase the said described real and personal property set out in the bill of complaint thereto attached as Exhibit B; and the plaintiff failed and neglected to inform this defendant that he, the plaintiff, claimed to be the owner of either the real or personal property described in the bill of complaint, and that he claimed that the said Charles S. Munson was merely a mortgagee, but distinctly asserted that the said Charles S. Munson owned the said real and personal property and that he, the plaintiff, only held the lease described in the bill of complaint and the option to purchase the same described in the bill of complaint; that this defendant had no other means of ascertaining the claim of the plaintiff now set up in his amended bill of complaint as amended in this cause, except by inquiry of the plaintiff as aforesaid, as the record fee simple title to the said described real estate and personal property was vested in the said Charles S. Munson, who also had assured this defendant that the only right, title or interest of the plaintiff consisted of the said lease and the said option to purchase, and this defendant thereupon and thereafter purchased the said described real estate and personal property from Charles S. Munson and wife, subject to the said option to purchase and the said lease, and this defendant therefore says that the plaintiff is now estopped from asserting the ownership of the said real estate and personal property, and from asserting that this defendant as the assignee of Charles S. Munson is a mere mortgagee, and from asserting any other claim, right, title or interest in either the personal

property or the real estate described in the amended bill of complaint as amended, except such right as the plaintiff has under the said lease and the said option to purchase."

The defendant Hammond then alleged facts concerning the filing of the unlawful detainer suit, *supra,* and alleged that the plaintiffs in this suit who were defendants in the unlawful detainer suit filed answers to his petition; that thereafter the cause came on for hearing and judgment was entered in his favor, to which judgment no appeal has been taken and which had become absolute.

Thereafter voluminous testimony was taken, for the most part before the Chancellor and the remainder was taken before a commissioner in the State of New York.

The amendment to the pleadings after our opinion and judgment, *supra,* together with the pleadings as they then stood before the Circuit Court reduced the issue to one of fact to be determined by the pleadings and the evidence which had been theretofore taken and the evidence which was thereafter taken. Such fact to be determined was whether or not there was a continuation of the mortgage debt involved in the foreclosure proceedings with the right retained in the debtor to discharge the debt and redeem the property, or was that debt discharged by the foreclosure proceedings and sale of the mortgaged property together with a bill of sale of certain furniture in the hotel to cover the amount of the deficiency after crediting on the final decree the amount bid for the property.

The decree of the Chancellor was and is to the effect that the original debt was discharged and that a new independent agreement was entered into between the parties whereby the former owner acquired a lease on the property and also acquired an indefinite sort of an option to purchase the property from the former mortgagee who had acquired title under foreclosure proceedings; that the option agreement

was so vague, indefinite and uncertain that it was not susceptible of being enforced by a suit for specific performance and that the defendant Hammond acquired fee simple title by conveyance from the purchasers who acquired their title at foreclosure sale.

Applying the well settled rule that the decree of a Chancellor based on findings of fact on conflicting testimony will not be disturbed, unless it be clearly shown that the Chancellor committed error in such findings, the decree of the Chancellor here should be affirmed and it is so ordered.

Affirmed.

TERRELL, C. J., and BUFORD and THOMAS, J. J., concur.

BROWN, J., concurs in opinion and judgment.

Justices WHITFIELD and CHAPMAN not participating as authorized by Section 4687, Compiled General Laws of 1927, and Rule 21-A of the Rules of this Court.