**JOHN CAMICHOS and GENEVA CAMICHOS, his wife, v. DIANA STORES CORPORATION, a corporation, et al.**

25 So. (2nd) 864                           January Term, 1946
April 30, 1946                                     Division A

*G. P. Garrett* and *Ed K. Goethe,* for appellants.

*J. Thomas Gurney* for Diana Stores Corporation, *H. M. Voorhis, W. H. Poe* and *Maguire, Voorhis & Wells,* for Florida Orlando Stores Corporation, *John G. Baker* and *Baker & Thornal* for Executrices and Trustees under the Will of Charles Rock, Sr., and the heirs of the said Charles Rock, Sr., and the heirs of the said Charles Rock, appellees.

BUFORD, J.:

On the 27th day of May, 1942, the Executrices of the Estate of Charles Rock, Sr., of Orlando, Florida, executed a certain lease on store buildings in Orlando, Florida, to John Camichos and his wife, Geneva Camichos, for a term of four years from the 1st day of May, 1942, until and inclusive of the 30th day of April, 1946. Paragraph 12 of the lease provided as follows:

"12. It is agreed by and between the parties hereto that the Lessee shall have the refusal of the property for an additional term at a rental and term to be agreed upon between the parties."

The Lessees went into possession of the premises and continued therein until the present time. On April 2, 1945, the Executrices and Trustees respectively under the last will and testament of Charles Rock, Sr., deceased, leased the premises to Diana Stores Corporation, a New York corporation, authorized to do business in the State of Florida, for a term of fifty

(50) years to begin April 1, 1945, and ending on the 31st day of March, 1995. That lease contained the following provision:

"52. It is expressly understood, anything hereinbefore or hereinafter contained that might be to the contrary notwithstanding, that this lease is made and delivered by the Lessors and accepted by the Lessee subject only to the leases in force upon said premises as hereinafter listed, and for the terms indicated, all of which have been scheduled and rents adjusted as of the effective date of this lease, to-wit, . . .

"John Camichos and Geneva Camichos, his wife, lease, beginning May 1, 1942, and ending May 1, 1946, at $450.00 per month until May 1, 1945, and thereafter at the rate of $500.00 per month until and of inclusive of April 30, 1946."

**Assignment of Existing Leases:**
"53. And the Lessors herein do hereby assign, set-over, transfer and convey to the Lessee herein, all the Lessor's right, title and interest in the said leases set out in the foregoing paragraph, and in and to any rents that may accrue therefrom, subject, however, to all the covenants, provisions and conditions of any and every nature of this lease. And the Lessee herein assumes on its part all the covenants and obligations of the Lessors in or under said leases described in the foregoing paragraph which have been disclosed to the Lessee."

Thereafter, on June 26, 1945, Diana Stores Corporation assigned its said lease to Florida Orlando Stores Corporation. The original lease to John Camichos and his wife, Geneva Camichos, was also assigned to Diana Stores Corporation and from Diana Stores Corporation to Florida Orlando Stores Corporation. In the assignment of the lease the following language was used:

"The Assignee hereby assumes all of the covenants, conditions and provisions in said indenture of lease contained and agreed that it, and its successors shall be bound for the due performance herein in the same manner as if it, the assignee, had been the original Lessee named in said indenture, and agrees to pay the rents and other payments in said indenture and lease reserved and provided for."

On July 31, 1945, John Camichos and his wife, Geneva Camichos, addressed the following notice to interested parties, to-wit:

"TO

OLGA FIELD, individually and as Executrix and Trustee under the Last Will and Testament of Charles Rock, Sr., deceased;

BERTHA BURKE, individually and as Executrix and Trustee under the Last Will and Testament of Charles Rock, Sr., deceased;

ERNEST J. BURKE;

CHARLES ROCK, JR., LUCILE ROCK, his wife;

HENRIETTA SCOTT; TURNER SCOTT, her husband;

FRANCES EGAN;

JERRY ROSS EDINGER, also known as JERRY ROSS;

DIANA STORES CORPORATION;

FLORIDA ORLANDO STORES CORPORATION.

"THIS IS TO NOTIFY YOU that pursuant to paragraph 12 of that certain lease dated the 27th day of May, A. D. 1942, between Bertha Burke and Olga Field, as Executrices of the Estate of Charles Rock, Sr. of Orlando, Florida, Lessors, and John Camichos and Geneva Camichos his wife, Lessees, demising for a term of four (4) years from May 1, 1942, the premises in the City of Orlando, Orange County, and State of Florida, known and described as follows:

That certain store rooms located at Numbers 13 and 17 North Orange Avenue, Orlando, Florida, more particularly described as the storerooms formerly occupied by Langston's Restaurant consisting of two dining rooms, kitchen, pantries, rest rooms, office and basement, all being on the Ground Floor of the Rock Building.

the undersigned lessees do hereby elect to extend and renew said lease for an additional term of four (4) years from the expiration thereof, at a rental to be agreed upon as in said lease provided.

"We hereby request that you prepare a renewal lease for the aforesaid additional term in accordance with said paragraph 12 and forward it to us for execution.

"Dated at Orlando, Florida, this 31st Day of July, A. D. 1945."

On August 23, 1945, Florida Orlando Stores Corporation replied to the notice given, supra, as follows:

"Mr. John Camichos,
 Mrs. Geneva Camichos
 Orlando, Florida

"Dear Sir and Madam:

"We have received your so-called "election to renew lease," dated July 31st, 1945.

"It is our present intention to demolish the existing building on June 1, 1946, and we cannot, therefore, entertain your request for a period greater than one month at a rental of one thousand ($1,000) dollars for that period.

"If, for any reason, demolition is postponed, you will be advised and if you wish to do so, you may remain as a monthly tenant at the rental of one thousand ($1,000) dollars per month."

On December 3, 1945, John Camichos and Geneva Camichos, his wife, filed their amended bill of complaint against "Diana Stores Corporation, a corporation, Florida Orlando Stores Corporation, a corporation; Olga Fields and Bertha Burke, as Executrices and Trustees under the Last Will and Testament of Charles Rock, Sr., deceased, and Olga Fields individually and Bertha Burke, individually, and Ernest J. Burke, her husband; Charles Rock, Jr. and Lucile Rock, his wife; Henrietta Scott and Turner Scott, her husband; Frances Egan, unmarried and Jerry Eddinger, also known as Jerry Ross, defendants, and for amended bill, allege that: . . . "seeking to have paragraph 12 of the original lease reformed or construed as to Section 12 thereof so as to provide that "the plaintiffs at the conclusion of this original term would be entitled to a renewal of said lease at a rental as high and on terms as satisfactory to Lessor as any bona

fide offer lessor might, at the conclusion of the original four year term, receive from any responsible person then desiring to rent same."

As a basis for this relief the amended bill of complaint averred in paragraph 5 of the bill inter alia as follows:

"Thereupon plaintiffs and Langston approached the agent of the Rock Estate and discussed with him the terms and conditions of a lease. Plaintiffs explained to said Agent that the price to be paid Langston for his restaurant business, including fixtures, was $12,000 and that, in order for plaintiffs satisfactorily to continue said restaurant business to be purchased from H. C. Langston, it would be necessary for plaintiffs to spend several thousand dollars additional to the sum paid H. C. Langston to purchase equipment and install improvements peculiarly adapted to be used in the conduct of said restaurant business at said particular location. Plaintiffs also then and there explained to said Agent that before they invested said $12,000 in purchase of said restaurant business and became obligated to spend said additional thousands of dollars in equipment and improvements, it was necessary that they be assured that at the conclusion of the four year term of the lease suggested by the Rock Estate, they could renew said lease for a like further term. Thereupon said agent assured them that they could renew said lease at a rental as high and on terms as satisfactory to the lessor, as any bona fide offer the Rock Estate might at the conclusion of said four year term have or receive from any responsible party then desiring to lease said premises. Plaintiffs agreed to accept a lease containing such a provision. Thereupon said agent for the Rock Estate caused the lease referred to in paragraph 3 above to be prepared by the attorney for the Rock Estate and signed by the Executrices of said Estate, for and on behalf of said estate, and presented it to plaintiffs for execution by them, then and there representing to plaintiffs that clause 12 thereof embodied the aforesaid oral agreement for renewal of said lease. Thereupon, relying upon said representation, and believing that said paragraph 12 of said lease did embody the oral agreement of the parties for a renewal as aforesaid, plaintiffs executed said lease referred

to in paragraph 3 hereof. Thereafter, so relying, said plaintiffs spent in excess of $17,000 in the acquisition of said business from H. C. Langston and in the subsequent puchase of restaurant furniture, furnishings and equipment, so peculiarly adapted to the conduct of said restaurant at said location and not elsewhere that the salvage value of all the furniture, furnishings and equipment used in said restaurant, if removed from said location, is nominal."

And in paragraph 7 of the Bill as follows:

"and are, and ever since have been, ready, able and willing to renew the said lease at a rental as high and on terms as satisfactory to the lessor as any bona fide offer the Rock Estate might, at the conclusion of the four year term of the original lease, receive from any responsible person then desiring to rent the same and are entitled to full, complete and punctual performance by the defendants of their obligation to grant to the plaintiffs a renewal of the original lease at a rental as high and on terms as satisfactory to the lessor as any bona fide offer they have received or may receive prior to the conclusion of the term of their original lease."

And in paragraph 8 of the Bill as follows:

"without then, theretofore, or at any time thereafter, first giving the plaintiffs the refusal aforesaid specified in Item 12 of plaintiffs' lease, as recited in paragraph 4 of this amended Bill, and without even offering to renew said lease for an additional term as actually agreed upon by said parties as aforesaid."

And in paragraph 13 of the Bill as follows:

"and the subsequent assignment of said lease on the 28th day of June A. D. 1945, by Diana Stores Corporation to Florida Orlando Stores Corporation, are each and all of them subordinate to the aforesaid contract right of the plaintiffs, under clause 12 of their lease, which clause is a covenant running with the land, to have a renewal of their original lease at a rental as high and on terms as satisfactory to the Lessor as any bona fide offer the Rock Estate might, at the conclusion of the term of said original lease receive from any responsible person then desiring to rent the same. Defendants, Diana Stores Corporation and Florida Orlando Stores Corporation,

were on notice of plaintiffs' said rights at the time they acquired their interest in said property because"

And in paragraph 14 of the bill as follows:

"In and by said notice, plaintiffs intended to request of defendants severally that they comply with their obligations under Clause 12 of the lease referred to in the notice by renewing the said original lease made by the Executrices of the Rock Estate to plaintiffs on May 27th A. D. 1942 for an additional term at a rental as high and on terms as satisfactory to Lessor as any bona fide offer received by Lessors, at the conclusion of plaintiffs' original lease term, from any responsible person then desiring to lease said leased premises."

And in paragraph 15 of the Bill, as follows:

"Plaintiffs construe said letter to be a refusal by the Florida Orlando Stores Corporation to comply with clause 12 of plaintiffs' lease of May 27th A. D. 1942 as the meaning thereof was agreed upon between the Executrices of the Rock Estate and plaintiffs and, therefore, as a refusal to renew plaintiffs' lease at the conclusion of the original term for an additional term at a rental as high and on terms as satisfactory to Lessor as any offer received by Lessors at the conclusion of plaintiffs' lease term from any responsible person then desiring to rent said leased premises. Moreover the rental stated in said letter is unreasonably high and not the fair rental value of the leased premises."

Paragraphs 16, 18, 19 and 20 of the Bill reiterated in different language in effect the same allegation contained in the above quoted paragraphs. Motion to strike the allegations above referred to were interposed and were granted as to paragraphs 1, 3, 4, 5, 6, 7, 8, 9 and 11 of the motion and were denied as to paragraphs 2, 10, 12 and 13, with leave to amend.

This Order eliminated the allegations of the Amended Bill hereinabove quoted and, in effect, left the Bill alleging that plaintiffs held possession of the property under the lease of May 27, 1942, which lease contained item or Paragraph 12 above quoted and praying for a judicial construction of that paragraph and an adjudication of plaintiffs' rights thereunder.

The plaintiffs declining to amend, the cause then came on to be heard upon motion to dismiss.

The Court entered its decree as follows:

"1. It is found and declared that, construing together all of the terms of lease contract under seal executed by the Executrices and Trustees of the estate of Charles Rock, deceased, purporting to grant to plaintiffs a lease upon the premises described therein, for a term of 4 years from May 1, 1942, in their entirety, paragraph 12 thereof, reading as follows: '12. It is agreed by and between the parties hereto that the lessee shall have the refusal of the property for an additional term at a rental and term to be agreed upon between the parties'—is too indefinite and uncertain to be enforceable in a court of law or in equity.

"2. It is found and declared that no oral representation or agreement of the agent of the executrices and trustees of the Estate of Charles Rock, deceased, made to or with the plaintiffs either before or after the execution of the aforesaid lease, and not shown to have been communicated to or known by the heirs and devisees of the said Charles Rock, deceased, or to the Diana Stores Corporation, or to the Florida Orlando Stores Corporation, prior to the execution of the leases and assignment of leases to the corporate defendants herein, is binding upon the defendants herein, and does not warrant the reformation of plaintiffs' said lease.

"3. It is found and declared that the plaintiffs are not entitled to an extension or renewal of the lease described in paragraph 1 of this decree, nor to a new lease, for any additional term or period after April 30, 1946, or to a reformation of said lease, by virtue of the terms of said lease, or any fact alleged in the amended bill herein.

"4. It is found and declared that the plaintiffs are not entitled to the relief claimed in paragraphs (B), (C), (D), (E) and (F), or any relief other than the declarations hereinbefore decreed and all relief, except for said declarations, be, and the same is hereby denied.

"DONE, ORDERED AND DECREED at Orlando, Florida, this 22nd day of December, 1945."

Plaintiffs appealed.

It appears that the prime question for us to determine is whether or not the allegations in Section 5 of the Amended Bill, viz:

"Thereupon said agent assured them they could renew said lease at a rental as high, and on terms as satisfactory to the lessor, as any bona fide offer the Rock Estate might, at the conclusion of said four year term, have or receive from any responsible party then desiring to lease said premises. Plaintiffs agreed to accept a lease containing such a provision. Thereupon said agent for the Rock estate caused the lease referred to in paragraph 3 above to be prepared by the attorney for the Rock Estate and signed by the Executrices of such estate, for and on behalf of each estate, and presented it to plaintiffs for execution by them, then and there representing to plaintiffs that clause 12 thereof embodied the aforesaid oral agreement for renewal of said lease. Thereupon, relying upon said representation, and believing that said paragraph 12 of said lease did embody the oral agreement of the parties for a renewal as aforesaid, plaintiffs executed said lease referred to in paragraph 3 hereof. Thereafter, so relying said plaintiffs spent in excess $17,000 in the acquisition of said business from H. C. Langston and in the subsequent purchase of restaurant furniture, furnishings and equipment so peculiarly adapted to the conduct of said location and not elsewhere that the salvage value of all the furniture, furnishings and equipment used in said restaurant, if removed from said location, is nominal."—are sufficient to warrant the judicial reformation of Section 12 of the lease so as to make it conform to the terms of the alleged oral agreement.

There are three infirmities reflected in the Amended Bill which warranted the order of the Chancellor striking the allegations heretofore referred to.

1st. No fraud, deception, mistake or over-reaching is alleged to have been committed by the Lessors. The general rule in this regard is stated in 45 American Juris. Sec. 45, page 609, as follows:

"A written instrument may be reformed where it fails to express the intentions of the parties thereto as the result of

accident, inadvertence, mistake, fraud or inequitable conduct, or both fraud and mistake, fraud or inequitable conduct being on one side and mistake on the other. Conversely, in the absence of satisfactory proof of accident, fraud, or mistake, there is no basis for a court of equity to reform an instrument."

See also sections following this where the same subject is discussed and authorities cited.

2nd. There is no showing that the alleged oral agreement was ever brought to the knowledge of the lessor or to the knowledge of any of the defendants and it, therefore, follows that unless the broker or agent was alleged to have full authority to enter into the agreement in behalf of the Lessors, the Lessors could not be bound by such agreement.

3rd. There is no allegation that the alleged broker or agent of the Lessors was at any time authorized to bind the Lessors by any oral agreement made by him. Without such allegation there could be no relief. See Holmberg v. Queck 90 Fla. 437, 105 So. 817; Rhode v. Gallat 70 Fla. 536, 70 So. 417; Smith v. Shackleford 92 Fla. 731, 110 So. 358.

In Fletcher v. Moriarity, 62 Fla. 486, 56 So. 437, we held that,

"Verbal agreements as to the terms of a lease of lands cannot vary or control the terms and meaning or effect of the lease as subsequently reduced to writing."

See also Swisher v. Conrad, 76 Fla. 644, 80 So. 564.

Paragraph 12 of the lease was in plain and unambiguous language and, therefore, must be construed as the Chancellor construed it, to mean just what the language used therein implies and nothing more.

It is immaterial that the provisions of Section 12 are such that no relief may be had in equity thereunder. The parties were all sui juris and competent to make their own contracts. It is not within the province of the court to write a new contract for the parties. See Gross v. Hammond, 123 Fla. 471, 167 So. 373; same case on later appeal; 138 Fla. 20, 188 So. 789. See also State ex rel. Johnson v. Blair, 351 Mo. 1072, 174 S.W. (2nd) 851; Frierson v. Gant, 23 Tenn. App. 428, 134 S.W. (2) 193; Thomas Hinds Lodge v. Presbyterian

Church, 103 Miss. 130, 60 So. 66; Salem Lodge No. 70 K. of P. v. Smith, 94 W. Va. 718, 120 S.E. 895; Streit v. Fay, 130 Ill. 319, 82 N.E. 648; 120 Am. St. Rep. 304; J. R. Reynolds Realty Co. v. Logan, et al., 216 N.C. 26, 3 S.E. (2nd) 280.

No error being reflected in the record, decree appealed from is affirmed.

So ordered.

CHAPMAN, C. J., TERRELL and ADAMS, JJ., concur.