FAULK & COLEMAN CONSTRUCTION COMPANY, a Florida corporation, Plaintiff,

v.

B. B. McCORMICK & SONS, Inc., a Florida corporation, and Rea Construction Company, a North Carolina corporation, and Ætna Casualty and Surety Company, a Connecticut corporation, Defendants.

Civ. A. No. 577.

United States District Court
N. D. Florida,
Tallahassee Division.
May 2, 1957.

Caldwell, Parker, Foster & Wigginton, Tallahassee, Fla., for plaintiff.

Ausley & Ausley, Tallahassee, Fla., for B. B. McCormick & Sons, Inc.

Keen, O'Kelley & Spitz, Tallahassee, Fla., for Rea Construction Co. and Aetna Casualty Co.

DE VANE, Chief Judge.

The several claims and cross-claims involved in this case were tried to the Court without a jury.

The Rea Construction Company had a contract with the Department of the Navy to make certain improvements and reconstruction at Corry Field, NAAS, Pensacola, Florida. Rea Construction Company subcontracted part of this work to B. B. McCormick & Sons, Inc. B. B. McCormick & Sons, Inc., in turn sub-subcontracted part of its work to Faulk & Coleman Construction Com-

pany. The fourth-party defendant in this case, Aetna Casualty and Surety Company is the surety on Rea Construction Company's performance bond. Neither B. B. McCormick & Sons, Inc., nor Faulk & Coleman Construction Company were bonded.

This litigation was precipitated by Faulk & Coleman Construction Company suing all the parties named in the caption above. The litigation involves contract disputes between Faulk & Coleman Construction Company and B. B. McCormick & Sons, Inc., on the one hand, and between Rea Construction Company and B. B. McCormick & Sons, Inc., on the other.

### The Faulk & Coleman Controversy

Faulk & Coleman Construction Company claims in its suit against McCormick several items totaling $28,880.69. These several items are separately considered below.

The first item claimed is the amount of retainage held by McCormick under the contract in the amount of $15,836.-80. There is no controversy between the parties as to this item.

As to the several other items, the parties stipulated and agreed as to McCormick's liability upon all of these, save one, in the total amount of $1,722.05. The one item remaining in controversy is the sum of $11,321.84, which represents a claim made by Faulk & Coleman for the hauling and disposal of a quantity of old pavement removed from drainage trenches by McCormick in the prosecution of its work under its part of the contract with Rea. Faulk & Coleman claim this as extra work beyond its contract with McCormick. On the other hand, McCormick claims that this item was included in the contract, or in the price agreed to be paid Faulk & Coleman for all the work it did.

Faulk & Coleman entered into a lump sum contract with McCormick, under which it agreed to do certain specified work listed in the contract for the lump sum price of $186,000. The contract specifies three types of work to be per-

formed by Faulk & Coleman. The first two items specified in the contract are not in controversy, and the controversy arises out of Section 2, Item (C), which is as follows:

"Section 2.

"The sub-contractor and the sub-sub-contractor agree that the work to be done by the sub-sub-contractor is as follows * * *

"Item (C) all pavement removal except the sand-shell weep-holes."

Laying aside at this point the testimony on the factual issues which are presented (and this testimony is in irreconcilable conflict), the Court finds and holds that this provision of the contract did not obligate Faulk & Coleman to remove the pavement cut by McCormick from the storm drainage ditches and piled along the edge of the runways. There are two obvious reasons for this interpretation of the cold language of the contract. First, no one had any knowledge of the amount of pavement that would be cut and removed from the drainage ditches; and second, McCormick makes no claim against Faulk & Coleman for cutting and removing this pavement from the drainage ditches. The contract between the parties required Faulk & Coleman to cut all the pavement it was under obligation to remove from the runways. So to accept the interpretation placed upon this part of the contract by McCormick would entitle it to file in addition a claim against Faulk & Coleman for its cost in cutting and piling this concrete. The two items just do not match and for that reason, the Court is unable to find and hold that under the language of the contract, the removal of this pavement was included within the terms of Item (C) of the contract here in controversy.

It is the further contention of McCormick that before the contract was executed by the parties that the question of the removal of this particular concrete was discussed, and that Faulk & Coleman agreed to remove same without further compensation under its lump sum contract with McCormick. Faulk & Cole-

man categorically deny this statement, and herein lies the serious conflict in the testimony. Mr. Coleman has two employees on his side of this controversy, who support him, and McCormick likewise has two employees on his side, who support his position in the matter. There is no way to reconcile this testimony and somebody has to be wrong.

The only matter in connection with this dispute that troubles the Court is that it developed at the trial that Faulk & Coleman in its estimate of the cost of the work it proposed to do for McCormick made a $10,000 error in its favor in its calculations, and if there was any evidence in the record that this error was known to the parties at the time the contract negotiations were concluded and the contract executed, it would be sufficient to satisfy this Court that the overall lump sum price included this work. It must be noted that the $10,000 error almost equals the amount here in dispute. But during the trial, it was admitted by all parties that none of them were aware of the error in Faulk & Coleman's estimate when the contract was consummated and executed. The evidence shows that Coleman used the estimate as his own guide during the negotiation, but that McCormick never saw it until after this litigation started. In the face of this evidence, the Court is unable to find and hold that this error played any part in the persuasion of Faulk & Coleman to include as an addition to its contract the removal of this concrete without additional compensation.

■ Upon all the testimony, the Court finds and holds that McCormick has failed to carry the burden of proof that the contract before its execution was orally amended to include this work.

■ McCormick further claims that in case the Court should find that Faulk & Coleman is entitled to be compensated for this work that the charges made for it are much too high. Again, we have conflicting testimony on the question, and again, the Court is forced to the conclusion that McCormick has failed to carry the burden of proof as to the unreasonableness of the charges made. These charges are in line with Coleman's estimate of the cost of cutting and removing the estimated 76,000 square yards of pavement included in the contract. The Florida law governing the Court's deci·sion on this issue will be found fully set forth in Camichos v. Diana Stores Corporation, 157 Fla. 349, 25 So.2d 864, and case there cited.

■ McCormick filed in this case a counter-claim against Faulk & Coleman totaling $4,627.70. During the course of the trial, McCormick waived a $200 item and McCormick and Coleman agreed to split a $280 item between them. This reduces McCormick's counter-claim to $4,-287.70. McCormick presented testimony fully supporting these items in the counter-claim and Faulk & Coleman offered no evidence contesting and disputing the claim. The counter-claim in the amount of $4,287.70 is allowed.

The Court recapitulates the allowed claim and counter-claim as follows:

| | |
|---|---|
| Retainage due Faulk & Coleman | $15,836.80 |
| Less proved counter-claims by McCormick | 4,287.70 |
| Net retainage | $11,549.10 |
| Plus proved and admitted invoice extras | 1,722.05 |
| Total of undisputed items due Faulk & Coleman by McCormick | $13,271.15 |
| Plus disputed item allowed herein | 11,321.84 |
| Total | $24,592.99. |

A judgment will be entered in favor of Faulk & Coleman and against B. B. McCormick & Sons, Inc., for this amount.

The Rea Construction Company and
B. B. McCormick & Sons, Inc.
Controversy

Rea Construction Company cross-claimed against defendant B. B. McCormick & Sons, Inc., the following items:

(a) Sand-clay temporary
patch East Field — $ 9,625.20

(b) Sand-shell back fill
drainage trenches — 34,988.66

(c) Damage to lights
and underground
cable — 2,237.56

(d) Damage to asphalt
runway — 200.00

(e) Improper shoulder
stabilization — 666.14

(f) Damage to light
bases — 1,524.00

(g) Pipe wastage — 2,510.71

Total of Rea cross-claim — $51,752.27.

By a cross, cross-claim McCormick sues Rea for the following items alleged to be due to McCormick from Rea:

(1) Retainage due
on contract — $41,745.37

(2) Extra for pipe
removal (change-
order) — 987.52

(3) Extra cost of
lime rock — 2,400.00

Total of McCormick claim
against Rea — $45,132.89.

By its pleadings and admissions in Court during the trial, McCormick has admitted its liability to Rea for Items (c), (d), (e), (f), and (g) of the Rea claim in the amount of $7,138.41. McCormick has denied and contested any liability to Rea for Items (a) and (b) in the total amount of $44,613.86. By its pleadings and admissions during the trial, Rea has admitted its liability to McCormick for Items (1) and (2) in the amount of $42,732.89. By its pleadings Rea denied any liability to McCormick for Item (3) in the amount of $2,400, but at the trial conceded its liability for this item.

Passing then to the claim of Rea for Items (a) and (b) in the total sum of $44,613.86, the Court finds itself pretty much in the position on this controversy as it did in the main controversy between Faulk & Coleman and McCormick. Here each party insists the contract is clear and unambiguous, and that no evidence is required to determine the intent of the parties, or to construe the meaning of the contract. Yet, each party places an entirely different interpretation on the contract, and to make matters more complicated, each party insists the provision of the contract here in dispute was discussed prior to the execution of the contract and its meaning and requirements were agreed upon between them. They violently disagree, however, as to the agreed understanding reached at this conference, and the views of each are supported by witnesses who were present when the understanding was reached at the conference.

The Court does not find the contract as clear and unambiguous as each party contends and evidence is required to enable the Court to determine which party's interpretation is correct. Being faced with the mass of conflicting evidence on the issue, the only reasonable thing left for the Court to do in determining who is right in this controversy is to review the conduct of the parties following the execution of the contract and while the work at Corry Field was in progress by all contracting parties to this suit.

The evidence shows without dispute that McCormick never did any work at Corry Field of the nature involved in Items (a) and (b) and was never called upon by Rea at any time to do this particular work. When the sand-clay temporary patch work (Item (a)) was ready to be done on East Field, Rea's superintendent testified that he was directed by the home office to attempt to get bids from several contractors for the work, and failing in this, was finally authorized to employ Faulk & Coleman to do the work, and Rea paid for same. Further, in connection with the sand-shell back fill of the drainage ditches, Rea secured

a modification of the specifications with reference to the type of material to be used in the back fill and never at any time consulted McCormick about the change in specifications or called upon McCormick to do the work. It was not until after all the work had been completed that Rea claimed that under the contract between it and McCormick that McCormick was obligated to do the work.

■ It is true that if the contract had placed the burden on McCormick to do this work, it was its duty to go forward and do the same, but the conduct of the parties throughout the time the work was being done is sufficient to defeat such interpretation of the contract as Rea seeks to place upon it. And while there is conflict in the testimony upon some of the questions involved in this controversy, the Court is of the opinion that, as to these two items, Rea has completely failed to carry the burden of proof in support of its claim that McCormick was obligated under the contract to do the work. The Rea claims for these items are therefore denied.

The Court recapitulates the allowed claims and counter-claims as follows:

Allowed McCormick claims against Rea:

| | |
|---|---|
| Retainage due on contract | $41,745.37 |
| Extra for pipe removal (change-order) | 987.52 |
| Extra cost of lime rock | 2,400.00 |
| Total allowed McCormick claims against Rea | $45,132.89. |
| Allowed Rea claims against McCormick: Total of claims (c), (d), (e), (f), and (g) | 7,138.41 |
| Balance due from Rea to McCormick | $37,994.48. |

A judgment will be entered in favor of B. B. McCormick & Sons, Inc., and against Rea Construction Company, a North Carolina corporation, and Aetna Casualty Company, a Connecticut corporation, for this amount.

Interest is allowed on each judgment from the date of the institution of this cause of action.