C. C. STANTON, trading and doing business as Stanton Oil Company, Appellant,

v.

The TEXAS COMPANY, Appellee.

No. 16436.

United States Court of Appeals
Fifth Circuit.

Nov. 18, 1957.

Rhydon C. Latham (of Latham & Mizell), Jacksonville, Fla., for appellant.

Cyril C. Copp, Jacksonville, Fla., William S. Clarke, Houston, Tex., Amzy B. Steed, New York City, Milton Handler, New York City, Oscar John Dorwin, Stanley D. Robinson, Charles L. Mandelstam, New York City, of counsel, for appellee.

Before HUTCHESON, Chief Judge, and TUTTLE and WISDOM, Circuit Judges.

HUTCHESON, Chief Judge.

Brought by plaintiff, a wholesale distributor of Shell Oil products, against defendant, the Texas Company, another marketer of petroleum products, the suit was for allegedly inducing a breach of contract between plaintiff and Horne's of Bayard, Inc., the operator of a gasoline service station and candy store in Bayard, Florida, which plaintiff had previously supplied.

In addition to compensatory damages, plaintiff, alleging that the interference with the contract rights of the plaintiff was without justification and malicious, and in violation of the Robinson-Patman Act, 15 U.S.C.A. §§ 13, 13a, 13b, 21a, claimed $1,000,000.00.

Defendant moved to dismiss the complaint, to strike from it the reference to the Robinson-Patman Act, and for summary judgment, arguing in support (1) that plaintiff was not entitled to any relief whatever because no valid contract or lease existed between plaintiff and the Hornes; and (2) that there had been no violation of the Robinson-Patman Act on which to ground a claim for punitive damages.

Granting the motions to the extent of striking the reference to the Robinson-Patman Act and the claim for punitive damages, the district judge denied defendant's motions to dismiss and for summary judgment except as to the claim of punitive damages.

Thereafter plaintiff moving for leave to file an amended complaint which it tendered with the motion and the district.

judge denying the motion on the ground that the amended complaint presented no essential difference in fact or in law from the original complaint, the cause went to trial before the court without a jury on the question of compensatory damages.

The trial concluded, the district judge made findings of fact and conclusions of law[1] and entered judgment accordingly,

I. Findings of Fact:

1. The plaintiff is a citizen and resident of Florida, the defendant is a Delaware corporation, and the amount in controversy exceeds Three Thousand Dollars, exclusive of interest and costs.

2. The plaintiff, C. C. Stanton, trading and doing business as Stanton Oil Co., is, and was at all times material hereto, a contract distributor of petroleum products manufactured and sold by Shell Oil Co., a corporation, with exclusive rights within his contract designated territory to sell such products in bulk to retailers. Such designated territory includes Bayard, Duval County, Florida.

3. Beginning in 1935, plaintiff had continuously as a customer, first Alton I. Horne, then Alton I. Horne and Robert Horne (Alton I. Horne's son) who owned and operated a gasoline filling station at Bayard, Florida. The Hornes handled plaintiff's Shell products exclusively.

4. About Oct. 4, 1948, the Hornes moved their location a short distance (still in Bayard, and in plaintiff's exclusive sales territory). The Hornes needed money to construct a paved driveway at the new establishment, and plaintiff advanced them $2000.00 to use for this purpose. This was paid by check, which had the following language typed upon the reverse side, "In full payment of lease on property at Bayard, Florida, known as (Retail Outlet) Horne's Candy Shoppe, for Gasoline Filling Station Rights for Five Year Period with Five Year Option". The check was payable to "Alton I. and Robert Horne" who indorsed it directly below the above quoted language and negotiated it. Stanton's pumps and underground equipment were installed at the new location.

5. The Hornes, with their respective wives and themselves as sole stockholders, incorporated the Bayard business as "Horne's of Bayard, Inc., a Florida corporation", on May 7, 1953. The business continued exactly as before with the corporation operating in lieu of the partnership and carrying on the sale of Shell products supplied by Stanton.

6. By letter of May 15, 1953, the defendant, Texas Company, wrote Shell Oil Co. that Mr. Horne had decided to change over to Texas products at this location. This letter was forwarded by Shell to Stanton, Shell advising Texas that the station was serviced by its distributor, Stanton. By letter of May 25, 1953, Stanton advised Texas Company that he held a five year lease with option to renew, and requested that the account be not disturbed by Texas as long as the lease was in force. No further dealings between the Hornes and Texas took place until after the first of the calendar year 1954.

7. Relations between the Hornes and Stanton became more strained. The Hornes were handling Texas products in similar enterprises at various locations in Florida and Georgia, and considered Texas products more saleable than Shell's. Shortly after the first of the calendar year 1954, Stanton began making a 1 cent per gallon rebate from tank wagon prices to the Hornes.

8. By letter of April 2, 1954, after additional negotiations between the Hornes and Texas Co., the Hornes notified the plaintiff Stanton they would no longer handle his Shell products, and gave him until April 10, 1954, to remove his equipment. The Hornes commenced using Texas products at Bayard April 12, 1954, and continued so doing until another company, Gulf Oil Co., commenced supplying the station in Dec., 1955.

9. The plaintiff contends (a) that the change over to Texas products by the Hornes was induced by the solicitation and invitation of Texas Co., and (b) that this occurred at a time when he had either (1) a valid lease with the Hornes, (2) a valid extension thereof, or (3) a satisfied customer who would have continued to deal with him (to Stanton's profit) throughout an implied extension of the lease for the second five years, absent the interference of Texas Company. I am inclined to view the language typed on the reverse of the $2,000 check as an exclusive sales agreement, or marketing agreement for five years, with a right to renew for five years, which right to renew was never exercised. However, I do not consider that this agreement requires legal construction or exact definition. Nor do I consider it material whether the agreement was or was not effectively renewed, so as to be in effect when Texas took over the supplying of the station on April 12, 1954.

I find that nothing was done by Texas to solicit the Horne's business at Bay-

and plaintiff has appealed, assigning four specifications of error.[2]

Recognizing the controlling effect of the findings of fact of the district court, on the tendered issue, whether defendant induced the breach of plaintiff's contract with Hornes, plaintiff devotes the larger portion of his brief to the task of overcoming the effect of these findings. Setting out some of the oral testimony and stating, "So we come into a direct conflict in the testimony", appellant goes on to say:

"If we had only this oral testimony, the Court would be faced with the impossible task of determining who's lying. However, you don't have to rely on oral testimony to so decide, to resolve this case. There is in this record documentary evidence in the form of correspondence between officials of Texas on this subject which sets it all out in full and gives us the true picture."

Thus premising, appellant, setting out the correspondence he relies on, argues vigorously that these writings completely refute and thus make clearly erroneous the court's finding of fact No. 9:

"I find that nothing was done by Texas to solicit the Hornes' business at Bayard, at any time material hereto. All the negotiations between the Hornes and Texas were at the Hornes' instigation and Texas did nothing more than accept the business when it was offered. Hence, regardless of the nature of the legal relation between the Hornes and Stanton, no breach of that relation is shown to have been induced by Texas Company."

Insisting that the court should have found to the contrary on this issue, appellant then proceeds to a discussion of the other issue which the court declined to decide, whether he had an enforceable contract with the Hornes. Urging upon us that even though a contract is unenforceable, because of the statute of frauds or of some other defect which could be raised by the other party to the contract, such defect cannot be availed of by a person in the position of Texas as a defense to a suit for causing the breach of it, he cites and discusses cases which he claims support his view.

Leaving to the last page of his brief, and without citing any authority or putting forward any argument in support, appellant contents himself with the dictum that there can be no doubt that

---

ard at any time material hereto. All the negotiations between the Hornes and Texas were at the Hornes' instigation, and Texas did nothing more than accept the business when it was offered. Hence, regardless of the nature of the legal relation between the Hornes and Stanton, no breach of that relation is shown to have been induced by Texas Company.

10. The parties stipulated that Stanton's recovery for loss of net profits, if allowed by the Court, should be in the amount of $11,071.30. As indicated above, no right to such recovery is established. Additionally, it was agreed that the plaintiff should recover $600 for the use of his underground equipment by Texas Company before its removal. The plaintiff is entitled to judgment in this amount, and for no other amount claimed.

Conclusions of Law:

1. This Court has jurisdiction of this cause, and of the parties.

2. The plaintiff is entitled to judgment against the defendant, The Texas Company, a corporation, in the amount of $600.00, as compensation for the use by defendant of plaintiff's underground tanks and equipment at Horne's of Bayard, Inc., station, Bayard, Florida, from April 12, 1954, to the time such equipment was removed.

3. The plaintiff is denied recovery for every other claim mentioned in his complaint.

**2.** (1) The Court erred in striking from the complaint reference to the Robinson-Patman Act and allegations supporting punitive damages.

(2) The Court erred in denying leave to file amended complaint.

(3) The Court erred in finding that the actions of Texas did not constitute unlawful interference with Stanton's rights to service Hornes of Bayard.

(4) The Court erred in refusing to allow plaintiff to recover punitive and compensatory damages.

Texas willfully and knowingly violated the Robinson-Patman Act.

Finally, in a single paragraph dealing with the question of damages and completely disregarding the finding that defendant had not committed the acts charged against it, appellant concludes his brief with the didactic assertion that he should be here awarded the compensatory damages which the parties agreed should be awarded as due, if there was a breach, and the cause should be remanded for a jury trial on the issue of punitive damages.

The appellee squarely meeting the contentions and arguments of appellant on the issue which was decided by the district judge, presents as its counter point one, "The trial court's finding of fact, that Texas did nothing to induce or support any breach of contract, is amply supported by the evidence and is dispositive of the entire appeal", and supports it by full reference to excerpts from and discussions of the record facts.

Proceeding then, as the appellant has done, though the district judge did not decide the question, to argue that there was no valid contract to breach, appellee puts forward and vigorously argues its counter point, "Plaintiff's action for inducing breach of contract will not lie because there was no valid contract to breach".  Citing in support Chipley v. Atkinson, 23 Fla. 206, 1 So. 934; Pokress v. Southern Hotel Corp., Fla., 42 So.2d 166; Behrman v. Max, 102 Fla. 1094, 137 So. 120; Camichos v. Diana Stores Corp., 157 Fla. 349, 25 So.2d 864; Baker v. Coleman, 160 Fla. 297, 34 So.2d 538; Minsky's Follies of Florida, Inc., v. Sennes, 5 Cir., 206 F.2d 1, appellee stoutly disputes appellant's contentions both as to the validity of the contract and as to his right to recover for interference with his business relations, even though there was no valid contract. Pointing out that the evidence completely fails to show:  (1) that there was an agreement on the essential terms of the option;  (2)

that the option was exercised; and (3) that the statute of frauds was satisfied; appellee insists that the evidence establishes as a matter of law that the alleged breach sued for did not occur and could not have occurred because plaintiff had no contract to breach.

Finally, meeting appellant's claim, that he pleaded and proved a case entitling him to punitive damages, by pointing out that on the facts of record and under the findings of the court, plaintiff failed to establish that he was entitled to any recovery whatever and his claim for punitive damages inevitably fails,[3] appellee insists that appellant's claim, that this is a case for punitive damages, is hardly to be taken seriously.

We find ourselves in complete agreement with appellee's position that the findings of fact and the rulings and judgment of the district court are well supported by the record.

It is impossible to read the pleadings and the evidence without reaching the fixed conviction that what was really in controversy below was not whether there had been a violation of the Robinson-Patman Act or whether Texas had interfered with the general business relations between plaintiff and the Hornes, but whether, as charged by plaintiff, "The Texas Company unlawfully interfered with the contract rights of the plaintiff without justification, as hereinabove shown, and operated to the detriment of the plaintiff, C. C. Stanton and to its own profit and advantage."

When, therefore, the district judge found, as he did in Par. 9:

"I find nothing was done by Texas to solicit the Hornes' business at Bayard at any time material hereto. All the negotiations between the Hornes and Texas were at the Hornes' instigation and Texas did nothing more than accept the business when it was offered.",

if his finding is supported by the record, he completely and effectively disposed of

---

3.  Winn & Lovett Grocery Co. v. Archer, 126 Fla. 308, 171 So. 214, 221; and Mc- Lain v. Pensacola Coach Corp., 152 Fla. 876, 13 So.2d 221.

348

the case before him. Recognizing that this is so, appellant undertakes by a strong and earnest attack on the finding to set it aside as erroneous, while the appellee, with the same recognition, as vigorously defends it as amply supported by the record.

We are not persuaded by appellant's arguments that the correspondence on which he relies refutes the oral testimony which the court accepted as correct and establishes that the finding was erroneous. On the contrary, after considering the whole record in the light of the finding and the arguments, we agree with appellee that we ought not, indeed may not, interfere with it. Because we do and because this finding is dispositive of the appeal, we find it unnecessary to discuss or consider the other matters so vigorously and interestingly discussed in both briefs.

The judgment was right. It is affirmed.